UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                         Criminal No. 12-20837-2

                Plaintiff,

v.                                      Hon. Mark A. Goldsmith

APRIL YVETTE HINSON,

                Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR MODIFICATION AND REDUCTION OF SENTENCE (Dkt. 112)

Before the Court is Defendant April Yvette Hinson's motion for modification and reduction of sentence (Dkt. 112). Defendant claims that she is entitled to a reduction of her sentence because the Court improperly applied certain sentence enhancements when calculating her advisory sentencing guideline range. Because the Court concludes that Defendant's claims are meritless, the Court denies Defendant's motion.

## I. BACKGROUND

A federal grand jury returned a first superseding indictment against Defendant, among other individuals, on January 2, 2013, charging her with various counts of mail fraud and money laundering relating to a scheme to defraud the American Family Life Assurance Company ("AFLAC"). First Superseding Indictment (Dkt. 3). Defendant subsequently entered into a Rule 11 plea agreement with the Government. Plea Agreement (Dkt. 66). Pursuant to that agreement, Defendant agreed to plead guilty to one count of mail fraud, and the Government agreed to dismiss the remaining charges. Id. at 1, 6. The agreement also set forth the following agreed-upon facts:

In or around July of 2007, after receiving the necessary application, the American Family Life Assurance Company ("AFLAC") issued an insurance policy in the name of defendant April Y. Hinson, through her purported employer, Priceless Records.

On or about April 4, 2008, defendant submitted to AFLAC an insurance claim form dated April 4, 2008, under the previously issued insurance policy. The claim asserted that on August 6, 2007, defendant was injured when, while riding a bike, she fell into a ditch. The claim form bore the physician name and purported signature of Dr. Gregory Henry, attesting to defendant's injury (fractured femur) and to defendant's disability. The claim form also represented that defendant was hospitalized at Hurley Medical Center in Flint, from August 6, 2007 through August 13, 2007. Lastly, the claim included a statement from the purported president of Priceless Records, attesting to the claimant's employment status and annual salary in the amount of $65,000.

As payment for the aforementioned claim, AFLAC issued check number C046040499 dated April 10, 2008, in the amount of $7,746.67, payable to April Y. Hinson, 12745 S. Saginaw St., Ste. 806 #178, Grand Blanc, MI 48439. The check was mailed via U.S. mail to the aforementioned address in the Eastern District of Michigan from AFLAC's headquarters in Columbus, Georgia.

On or about April 17, 2008, defendant cashed check number C046040499 at Super Cash Pay Day Advance, 1701 N. Dort Highway, Flint, Eastern District of Michigan, obtaining cash for her own personal use.

The information supplied in the claim form contained materially false information. In reality, defendant did not suffer the claimed injury, was not hospitalized for the injury, did not undergo the claimed medical treatment, and was not employed by Priceless Records. Thus, the submitted claim was materially fraudulent, and defendant acted with the intent to defraud AFLAC.

In short, defendant, with the intent to defraud, committed the crime of mail fraud by devising a scheme to defraud or to obtain money from AFLAC by materially false or fraudulent representations and in carrying out the scheme, defendant caused the mails to be used.

In addition, defendant used a firearm in connection with the offense when she pointed a firearm at a co-conspirator and threatened him to turn over money to her that she and the co-conspirator fraudulently obtained from AFLAC.

> Lastly, the scheme to defraud included the defendant's participation in the submission of other false insurance claims. In total, defendant submitted, or assisted in submitting, at least one hundred twenty five (125) false insurance claims to AFLAC, with a total loss amount of at least $912,341.53.

Id. at 2-3.

The worksheets attached to the plea agreement also set forth the calculation of the applicable sentencing guideline range. For a conviction of mail fraud, the worksheets started with a base offense level of 7; they then added 14 levels for a loss of more than $400,000, and 2 levels for possession of a firearm in connection with the offense. The worksheets then added an additional 4-level adjustment for leadership, resulting in an adjusted offense level of 27. Plea Agreement, Worksheet A. With a three-level reduction for acceptance of responsibility, Defendant's total offense level became 24. Given a criminal history category of I, this resulted in a guideline range of 51-63 months, to which all the parties agreed. Plea Agreement at 4.

Defendant consented to enter a guilty plea before Magistrate Judge Michael Hluchaniuk on February 14, 2013 (Dkt. 55), and she entered such a plea that same day. Prior to Defendant pleading guilty, the Magistrate Judge went through an exhaustive examination of Defendant to ensure that Defendant's decision to enter a guilty plea was knowing and voluntary. As part of that examination, the Magistrate Judge confirmed that Defendant understood that her applicable guideline range was 51 to 63 months. Plea Tr. at 18 (Dkt. 86). Government counsel also read the above factual statement aloud; Defendant agreed it was accurate. Id. at 13-15, 18. Finally, the Magistrate Judge confirmed that Defendant had considered and understood the waiver provisions of the agreement. Id. at 21.

The Magistrate Judge subsequently issued a Report and Recommendation, concluding that Defendant entered her plea knowingly and intelligently, and recommending the Court accept

3

the plea.  Report & Recommendation ("R&R") (Dkt. 61).  The Court adopted the R&R, accepted the guilty plea, and took the Rule 11 plea agreement under advisement (Dkt. 76).

The Court then sentenced Defendant on July 2, 2013.  The Court adopted the plea agreement, given that both sides urged its adoption.  Sentencing Tr. at 6 (Dkt. 98).  The Court reiterated that Defendant's advisory guideline range was 51 to 63 months; both the Government and Defendant's counsel agreed.  Id. at 7-8.  The Court sentenced Defendant to 63 months' imprisonment, noting that "the Court believes that the guidelines are quite lenient for this defendant and this crime and but for the Rule 11 Plea Agreement, the Court would be inclined to in fact impose a greater sentence."  Id. at 16-17.

Defendant filed her first motion for modification and sentence reduction on November 20, 2013 (Dkt. 100).  Defendant argued that the sentence enhancements that were used to calculate her guideline range were improper, because they were not charged in the indictment.  She claimed this violated the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013), because they increased her sentencing guideline range.  Id. at 6-7.

The Government filed a response, highlighting that the sentence enhancements did not have to be charged in the indictment, or found by a jury, because they only increased her advisory guideline range, not a statutory mandatory minimum or maximum.  Gov't Resp. (Dkt. 102).  Defendant subsequently sent a letter to the Court requesting to withdraw her motion in light of the Government's response:

> I currently have a motion in place that Mr. Wigod responded to [on] December 17, 2013.  Since I initially mailed the motion I have had a total change of disposition.  I would like to have the motion dismissed.  I believe it lacked merit and was unwarranted.

See 2/10/14 Op. (Dkt. 103).  The Court, therefore, dismissed the motion without prejudice.  Id.

4

Defendant filed the instant motion five months later, raising, in essence, the same argument as her original motion, i.e., that the sentence enhancements were improper because they were not charged in the indictment. Def. Mot. (Dkt. 112). The Government filed a response (Dkt. 115), and Defendant filed a reply (Dkt. 116).

## II.  ANALYSIS

Defendant argues that the Court should modify her sentence because the sentence enhancements increased her applicable guideline range, but were not charged in the indictment. Defendant does not explicitly cite the authority under which she believes the Court is authorized to modify her sentence, i.e., 28 U.S.C. § 2255, 18 U.S.C. § 3582(c), 18 U.S.C. § 3742(a), or some other provision.[1] This alone is cause to dismiss Defendant's motion, because it produces uncertainty as to the applicable standards. Nevertheless, regardless of the authority that Defendant might have invoked, the Court denies the motion for lack of merit.

### A.  Sentence Enhancements Under Alleyne and Apprendi

Defendant's primary argument is that her sentence was erroneous because it included enhancements for (i) use of a firearm; (ii) "organizer/leadership"; and (iii) over $400,000 of loss. Def. Mot. at 2 (cm/ecf page). According to Defendant, none of these facts was included in the indictment. Id. Therefore, Defendant claims that the Supreme Court's decisions in Alleyne v. United States, 133 S. Ct. 2151 (2013), and Apprendi v. New Jersey, 530 U.S. 466 (2000), require

---

[1] Defendant cursorily mentions Federal Rule of Criminal Procedure 52(b). See Def. Mot. at 2 (cm/ecf page); Def. Reply at 10. "However, Rule 52(b) simply defines the plain error standard of review and does not provide a vehicle for the district court to modify [a] sentence." United States v. Tubby, 546 F. App'x 869, 873 (11th Cir. 2013); see also United States v. Olano, 507 U.S. 725, 731 (1993) ("Federal Rule of Criminal Procedure 52(b), which governs on appeal from criminal proceedings, provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court." (emphasis added)); United States v. Campbell, 96 F. App'x 966, 968 (6th Cir. 2004) (holding that Rule 52(b) "does not empower a district court to review an allegation of error in a prior criminal proceeding").

5

that the enhancements not be used because they increased her guideline range and corresponding sentence.  Id. at 4 (cm/ecf page).

The trouble with Defendant's argument, however, is that the Supreme Court's decisions in Alleyne and Apprendi are not applicable here.  In Alleyne, the Supreme Court held that any fact (other than a prior conviction) that increases the mandatory minimum sentence for a crime is an "element" of the offense that must be submitted to the jury.  133 S. Ct. at 2155, 2162-2163. Similarly, in Apprendi, 530 U.S. at 490, the Supreme Court concluded that any fact (other than a prior conviction) that increases the statutory maximum sentence for a crime must be submitted to the jury.

In this case, however, the sentence enhancements neither increased the mandatory minimum sentence, nor the statutory maximum.  Instead, it changed the guideline range — a range that is advisory, not mandatory.  See United States v. Booker, 543 U.S. 220, 233 (2005). Numerous courts, including the Sixth Circuit, have concluded that Alleyne and Apprendi do not apply when the fact at issue changes the advisory sentencing guidelines, rather than the statutory mandatory minimum or maximum.  See, e.g., United States v. Agbebiyi, 575 F. App'x 624, 632 (6th Cir. 2014) (in rejecting the defendant's argument that the amount of loss should have been submitted to the jury instead of decided by the judge, holding that "Apprendi and its progeny do not apply here, as those cases dealt with Sixth Amendment rights with regard to legally proscribed criminal penalties imposed by statutory minimums or maximums, while the sentence imposed here was based on the Sentencing Guidelines"); United States v. Johnson, 732 F.3d 577, 583-584 (6th Cir. 2013); United States v. Cooper, 739 F.3d 873, 884 (6th Cir. 2014) ("Alleyne dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range[.]"); United States v. Smith, 749

6

F.3d 465, 487 (6th Cir. 2014); Watson v. United States, No. 13-cv-725, 2013 WL 6512974, at *3 (W.D. Mich. Dec. 12, 2013) ("Alleyne held that facts that increase the mandatory minimum sentence must be submitted to a jury.  The enhancement of which Movant complains impacted the sentencing guideline range, but not the mandatory minimum.").  Indeed, this is confirmed by the Supreme Court's statement in Alleyne about what its holding did not include:  "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury.  We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."  Alleyne, 133 S. Ct. at 2163.

For her conviction for mail fraud, Defendant faced no statutory mandatory minimum term of imprisonment, and a maximum term of 20 years.  See 18 U.S.C. § 1341.  The enhancements at issue — including the enhancement for a loss of over $400,000 — did not change these statutory limitations, and Defendant's agreed-upon guideline range of 51-63 months fits comfortably within this statutory range.  The same is obviously true with respect to Defendant's sentence of 63 months.  Therefore, because the enhancements only affected the advisory guidelines, and not the statutory minimum and/or maximum, the Supreme Court's decisions in Alleyne and Apprendi do not apply.  Defendant's original suggestion that her claim based on Alleyne and Apprendi "lack[s] merit" was correct.  See 2/10/14 Op.

### B.  Other Miscellaneous Arguments

Defendant cursorily raises various other arguments, none of which has merit.  First, Defendant suggests that she is "actually innocent" of using a firearm in connection with the instant offense.  She argues that the "2009 plea transcripts will show that the colloquy never mentioned that the monies the petitioner was trying to retrieve was [sic] from Aflac."  Def. Mot. at 4 (cm/ecf page).  It may be true that the plea transcripts from the 2009 state court case do not

7

reveal this information.  However, in her plea agreement in this case, Defendant specifically admitted that she "used a firearm in connection with the offense when she pointed a firearm at a co-conspirator and threatened him to turn over money to her that she and the co-conspirator fraudulently obtained from AFLAC."  Plea Agreement at 3.  Therefore, this sentence enhancement is based on more than "conjecture," as Defendant claims; it is based on her own admission in the plea agreement.  For this reason, the Court also rejects Defendant's argument — raised in her reply — that "[t]he firearm did not in any way cause the scheme to reach its fruition, nor was it used in connection with the instant offense."  Def. Reply at 8-9.

Second, Defendant challenges the monetary determination that added 14 levels to her base offense level.  She claims the loss at issue is only approximately $119,000.  Def. Mot. at 3 (cm/ecf page).  However, as with the firearm enhancement, Defendant admitted in the plea agreement that, "[i]n total, [she] submitted, or assisted in submitting, at least one hundred twenty five (125) false insurance claims to AFLAC, with a total loss amount of at least $912,341.53."  Plea Agreement at 3.  Therefore, the Court properly applied a 14-level enhancement because the loss was more than $400,000.

Third, Defendant initially raised a claim regarding the application of one criminal history point for her 1999 misdemeanor conviction for simple larceny.  Def. Mot. at 3-4 (cm/ecf pages).  However, in her reply, Defendant "concede[d] that 'her assertions of errors relating to her criminal history were incorrect,' (in respect to the added +1, 4A1.1 from the 1999 conviction), as the Government has stated in his response."  Def. Reply at 1.  Therefore, the Court deems this claim abandoned.

Fourth, although unclear, Defendant appears to suggest that she should not have been found guilty because AFLAC suffered no pecuniary loss.  Def. Reply at 4 ("The differential in

sentence between what the Petitioner would have received without the finding of the pecuniary loss, and what she could receive with it, is extreme, the difference being between a fine or up to 20 years imprisonment/both."). However, she admitted in her plea agreement that AFLAC wrote her a check for $7,746.67, that she cashed this check, that the check was based on a fraudulent claim, and that she submitted the fraudulent claim with the intent to defraud AFLAC. Plea Agreement at 2-3. She further admitted that the total loss amount from the scheme totaled over $900,000. Id. Accordingly, her claim of AFLAC suffering no loss is belied by the record.[2]

Fifth, Defendant raises for the first time in her reply a claim that the charges were time barred. In particular, she asserts that, because the commencement of the offense was allegedly 2007, the charges (i) were barred by 18 U.S.C. § 3282(a) — which applies a five-year statute of limitations for non-capital offenses unless otherwise expressly provided by law — and (ii) violated her due process rights, because evidence "was no longer available due to the delay between events and the indictment." Def. Reply at 1. However, "[a]rguments raised for the first time in a reply brief are waived." United States v. Owens, 458 F. App'x 444, 446 (6th Cir. 2012). Therefore, the Court deems this argument waived. Furthermore, although the scheme may have commenced in 2007, the mailings that formed the basis for the conviction occurred in April 2008 — within the five-year statute of limitations. See First Superseding Indictment (Dkt. 3); Plea Agreement at 2-3 (Dkt. 66); see also United States v. Bennett, 765 F.3d 887, 893-894 (8th Cir. 2014) (discussing when the statute of limitations begins to run for purposes of the mail fraud statute); United States v. Munaco, No. 07-20341, 2008 WL 4771899, at *1-2 (E.D. Mich.

---

[2]  To the extent Defendant is claiming the indictment needed to charge that she intended to defraud AFLAC, it did so. See First Superseding Indictment at 4-5. She further admitted this fact in her plea agreement. Plea Agreement at 2-3. To the extent she is challenging the finding of the amount of the loss, Defendant specifically admitted to a loss of over $900,000 in her plea agreement. Id. To the extent Defendant is challenging the increase in offense level based on the amount of the loss (as not being the amount charged in the indictment), the Court addressed this claim above.

Oct. 28, 2008).   Moreover, Defendant does not explain what evidence was purportedly "no longer available," nor does she explain why she failed to raise this earlier or how this prejudiced her, particularly in light of her guilty plea.  Accordingly, the Court rejects this argument.

Sixth, Defendant claims that the "remarks about the gun [were not] read into the plea hearing, which was conducted by Magistrate Judge Hluchaniuk."   Def. Reply at 7.   This argument was raised for the first time in Defendant's reply brief, and is thus waived.  Owens, 458 F. App'x at 446.   Furthermore, this claim is belied by the record; Government counsel specifically read the entire factual statement from the plea agreement aloud, and Defendant agreed with that reading.  Plea Tr. at 15, 18.

Finally, Defendant suggests in a footnote that her plea is invalid because it was taken before a Magistrate Judge.  Def. Reply at 7 n.1.  This argument was raised for the first time in her reply brief, and is thus waived.  Owens, 458 F. App'x at 446.  Even if it was not waived, however, this claim lacks merit.  Defendant cites United States v. Harden, 758 F.3d 886 (7th Cir. 2014) — a non-binding case — in which the Seventh Circuit held that Magistrate Judges may not accept guilty pleas and adjudge a defendant guilty.  Id. at 888-892.  However, that is not what happened here.  Rather, Defendant consented to have the Magistrate Judge conduct the plea hearing, Consent (Dkt. 55), and the Magistrate Judge then issued a Report and Recommendation, recommending that the Court accept the guilty plea (Dkt. 61), which the Court ultimately did (Dkt. 76).  This practice is expressly permitted under Harden.  758 F.3d at 891 ("There is widespread agreement that a magistrate judge may conduct a Rule 11(b) colloquy for the purpose of making a report and recommendation. . . . We agree that this is a permissible practice . . . .").  Therefore, the Court rejects this argument as well.

### III.  CERTIFICATE OF APPEALABILITY

Because Defendant's claim for relief lacks merit, the Court will also deny a certificate of appealability to the extent that a certificate of appealability would be required for an appeal of this decision.   To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2).   To demonstrate this denial, the applicant is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate enough for encouragement to proceed further.   See Slack v. McDaniel, 529 U.S. 473, 483–484 (2000).   For the reasons stated above, the Court will deny Defendant a certificate of appealability because reasonable jurists could not find this Court's assessment of her claims debatable.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for modification and reduction of sentence (Dkt. 112).

SO ORDERED.


Dated:  January 28, 2015                    s/Mark A. Goldsmith
         Detroit, Michigan                  MARK A. GOLDSMITH
                                            United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 28, 2015.

                                            s/Johnetta M. Curry-Williams
                                            Case Manager